We're ready for argument now in the case of the United States v. Immel. Okay. Mr. Goodman. May it please the Court, Counsel. My name is Leonard Goodman. I represent Brett Immel in this appeal. We bring two claims on this appeal, and I'd like to focus the bulk of my time on the first claim, the evidentiary issue, whether or not the trial court erred in allowing extensive evidence about the spike in Mr. Immel's income and personal spending after his bankruptcy filing, which took place on October 2, 2009. The issue before the jury was whether Mr. Immel knowingly lied on his bankruptcy petition. The fact that his income spiked after filing, it is our position, did not help the jury decide any fact at issue. As the Supreme Court has found, and all parties agree, the wages of a Chapter 7 debtor that he earns or the assets that he acquires after the bankruptcy filing are not part of the bankruptcy estate and cannot be claimed by his creditors. Yet Inspector Welniak, testifying for the government, testified about post-petition income and spending in testimony that spans 50 pages of the trial transcript and was also the focus of five summary charts and graphs presented to the jury. The record reveals that Mr. Immel's post-petition income was earned through his self-employment with a Florida-based real estate partnership called Hanover Companies. He was a 15% partner in that business, non-controlling partner. The district court did not provide any explanation for why all of this post-petition evidence was relevant except to say that it was going to be admitted based on the government's stated purpose and in the interest of justice. The government... But Mr. Immel, as I recall, wasn't candid about what these interests in Hanover and 14 Consulting actually were. Your Honor, he did disclose... let's start with... He said they existed, but didn't he value them at a dollar or something? He did, and his bankruptcy attorney was asked about that and explained that an LLC, an interest in an LLC, is very difficult to value. So the bankruptcy attorney, according to his testimony, was comfortable with that estimate. Now certainly the 14... The bankruptcy attorney who said that should give thanks that he was not himself prosecuted for bankruptcy fraud. Well, I would respectfully disagree with that. As you have described it, the bankruptcy attorney said that any limited liability company can be valued at a dollar in bankruptcy because who knows what it's really worth. It's not traded on the market. And as I say, anybody who takes that view is committing widespread bankruptcy fraud. Yeah, I don't think that that was his testimony, Judge Easterbrook. I thought his testimony was actually that he was relying entirely on the numbers that Mr. Immel gave him and was trying to create as much distance between himself and Mr. Immel as he could. It was the impression I got anyway from reading those. Well, the handwritten form that Mr. Immel filled out with respect to his LLC, the 14 consulting, which was set up four months prior to filing bankruptcy. I mean, the government sees that as a damning fact as opposed to as an exonerating fact. He sets this up. Then as they portray it, moves his financial transactions over to 14 consulting so he can tell the court that there's nothing much in his personal bank account because it's actually all over 14 consulting without his telling anybody. Well, Your Honor, on his handwritten notes that his bankruptcy attorney submitted, he valued that LLC that he set up at $1,000. The account associated with it had $1,700 in it on the date of filing. This is not a case where significant assets were concealed from the debtor. In fact, that account never had significant assets in it because he spent everything that he made. I'm not sure that's so exonerating either. And one of the points, I'm not going to find the page, one of the points the government makes is that, I'm going to say, you're overstating the rule about post-petition assets. I mean, if the bankruptcy estate itself holds property, then income thrown off by that property during the course of the bankruptcy should be under the control of the trustee. You don't get to tell the trustee that there's nothing if there is, in fact, something. That's correct, Your Honor. But there certainly is no evidence in the record that there was assets of the estate that were throwing off income prior to the petition that were not disclosed. There simply is not evidence of that. Really, what we have here is we have— But Hanover, I mean, there is evidence that Hanover was doing much better than anything Mr. Immel— Well, that is correct. There is evidence that his—so basically what his bankruptcy attorney testified to is that when your primary source of income comes from the operation of a business, you can estimate that. You don't get regular paychecks. You can estimate your income in two different ways. The bankruptcy attorney testified that the $2,000 was an estimate, and he said that you can either estimate based on average monthly income prior, or you can do a projection of monthly income in the future. But you also have a duty to update. Suppose he did estimate $2,000. The record, as I recall, shows numbers much more like $10,000 and on up. There is a duty to update this while the bankruptcy court is handling things. That's correct, Your Honor. That certainly was not something that was specifically alleged in the indictment. It wasn't specifically a part of the trial. It's an overall part of the fraud, I think. The government's theory was that he lied on his petition. That was the theory that was presented to the jury. And the issue on this appeal is why 50 pages of testimony about his spending for his pets and at sushi restaurants and buying a sofa. Are you having people make his mortgage payments? I mean, he did use this money. It probably goes to his intent, is my guess. I mean, they have to prove intent in a fraud case, right? There's good evidence of intent when you show that this guy who files bankruptcy is spending tens of thousands of dollars in luxury stores. I mean, it's a little weird, wouldn't you agree? Most people that file bankruptcy don't do those things. I agree that it's a suspicious fact that his income escalated and spiked. But it could have gone the other way, too. And I think that's, you know, the government had to prove. But there was cross-examination on that, right? The defense put on no case. The government put on absolutely no evidence about any withheld income that should have been part of the estate. There was no evidence as to how about Hanover's business other than the fact it was a real estate business. So there simply is just no justification. And this is very much like United States v. Klebig where exactly this type of error was found by this court to warrant reversal. As in Klebig, the disputed evidence here did not help the jury decide any fact. The disputed evidence that after filing, his business took off, the real estate business took off, and all of a sudden the money was rolling in, that did not help the jury decide whether he lied on his petition, which is what was the issue before the jury. And the government has basically admitted that in their brief. On page 24, the government writes, the defendant also received a substantial increase in income from $2,700 up to $35,000 three months after his petition, quote, that would have been indicative that the filing was not in good faith. Our point is, Your Honor, that there's no evidence that the defendant's spike in income post-petition was indicative of bad faith. There's simply nothing in the record to support that. On page 27, the government writes, his substantial hidden income and spending on luxury items allowed the jury to infer that he concealed his assets so he could continue living a comfortable lifestyle while discharging his significant debts. It simply does not. You can't infer. They're simply from innocent facts. You can't make an inference like that. And this is not harmless error, and I would like to reserve 20 seconds. Thank you. Thank you, Mr. Goodman. Mr. Sinner. Good morning, Your Honors. May it please the court, Ailey Sinner on behalf of the United States. The court should affirm defendant's conviction. As the record shows, defendant's bankruptcy petition had multiple lies. He lied about his monthly income, and I take issue with the idea that this was an insignificant lie. In the months leading up to his petition, his monthly income was about $10,000 a month. That's four times what he reported on his petition. And as we discussed in the months after, it spiked and went up even more than that, five times, six times. He lied about his rental income. And again, this responds to one of Mr. Goodman's arguments. Rental income is undisputably part of the estate. The rental income was from properties that were on the estate, and all money coming from those properties should have been part of the estate, and he lied on the petition, and he lied through the date of discharge about his rental income. He also lied about payments that were made to his creditors from an account he didn't disclose. He lied about the entities he owned. As Your Honor pointed out, he said the entities were worth $1 when tens of thousands of dollars were flowing through those entities. To hide those lies, he created a shell corporation. He did it four months before he filed his petition. And we think the timing is indicative of intent here. He knows he's going to file for bankruptcy. Things are looking bad. He creates a shell corporation, and he switches all his personal income, all his spending, to an account associated with that corporation. It's not a corporation. Excuse me. An LLC. Thank you. He conceals that account associated with the LLC from... And he's the only signatory. He's the only signatory. It's a single-member LLC. And he conceals the account associated with that LLC from the trustee. He doesn't list it on his petition. So that concealment of the assets that were flowing through the LLC account, that concealment starts on day one, and it runs through the discharge. And the post-petition evidence was relevant to that continuing concealment. The statute, the indictment, the jury instructions, they all refer to concealment as a continuing offense. And that makes sense. If you're going to conceal assets on the petition, you can't all of a sudden reveal those hidden assets at your 341 hearing. You wouldn't get your discharge. You wouldn't accomplish. The bankruptcy court might dismiss the whole case. That's right. I believe the case would have been dismissed. Multiple witnesses, Kathy Stege, Ron Peterson, the bankruptcy trustees, testified that that could lead to a dismissal and probably would have led to the same bankruptcy fraud charges that he ended up with here in any event. So the statute, 18 U.S.C. 3284, says concealment is a continuing offense that runs until the debtor's been fully discharged. The indictment specifically charged the defendant with concealing assets from the date of petition until the date of discharge. And the jury instructions align with that. They instructed the jury, the court instructed the jury that acts that occurred after the bankruptcy began can be part of a concealment. I take it we don't have any challenge to those jury instructions before us. We have an evidentiary challenge, but it's not a jury instruction challenge. Correct, Your Honor. And consistent with that law and the instructions, the government produced evidence of this continuing concealment. They produced evidence that at the time of the petition he was concealing sources of income, including rental income that was, again, undeniably part of the estate, and that that concealment continued through the pendency of the bankruptcy. Defendant's concealment only ended, and there was evidence of this at trial, it only ended the week he received the discharge. The rental checks that he was depositing into the LLC, the hidden LLC account, the week that he receives the discharge, he sends them back to the personal account that was disclosed on the petition. And I think that leads to my next argument, which is that this evidence was also, to speak to Your Honor's point, this evidence was also relevant to intent. It was relevant to motive. It was relevant to absence of mistake. And those were defenses that defense counsel set forth at trial. He said, well, these were just mistakes. They were honest mistakes, good faith mistakes. Yes, I was off by a few thousand. Yes, I missed some things, but those were mistakes. And the government was entitled to present evidence to rebut, to respond to that theory. The fact that the concealment ran through the pendency of the bankruptcy and then stopped on the week of discharge shows that this wasn't a mistake. He intentionally hid these accounts. He hid these sources of income. And as soon as he gets his discharge, he stops concealing them. It also was relevant to his motive. Can I ask you a question, though? I mean, at the beginning of the briefs, there's a statement of what his assets were and what his liabilities were, and the liabilities were like four times the amount of the assets. I can't quite remember. Yeah, 1.6 million in assets on the petition, 6.2 million in debts. Is it the government's position that the amount of assets he was concealing equaled the amount of debts? Is it your notion that had this been made known to the court and the trustee, the whole thing would have had to go? No, Your Honor. The government doesn't dispute that his debts far outweighed his assets, but that doesn't mean you can lie on your petition. It doesn't mean you can omit relevant facts that you're required to disclose. And here I disagree with counsel's characterization. I think there were significant assets that weren't disclosed. Tens of thousands of dollars in December, right before he gets his discharge, he draws $37,000 in income. Defendant had smaller creditors, and they're listed in his petition in the schedules. He had creditors that had $5,000 of credit card debt. Some of those credit cards could have been paid off. Those creditors could have been paid off with the assets that he hid from the trustee. But to answer your question again, the government doesn't dispute that his debts outweighed his assets. In addition to being probative of intent, absence of mistake, and motive, the post-petition evidence also responded to other arguments the defendant made at trial. At trial he argued that the government hadn't proven that this money was income, but the post-petition evidence showed that he was getting the money from his employer, from rent checks made out to him, and that he was using the money for entirely personal expenses, furniture sent to his home, kids' toys, dinners, clothing. So that was another relevant purpose for the post-petition evidence. Finally, even if there was some error in the admission of the evidence and the government takes the position that there was not, any error was harmless. There was significant, and the defendant conceded this in his brief, there was significant pre-petition evidence of the same concealment. At the time of the petition, he was receiving the same rent checks that he received after the petition. He was receiving income from the same sources that were hidden from the trustee. $10,000, that's how much he was receiving in average monthly income. That's a lie on his petition, and that was true at the date of petition, and it was true at the date of discharge. If there are no further questions, I'd ask that the court please affirm the defendant's conviction. Thank you. Thank you, Mr. Zenner. Mr. Goodman, you have 17 seconds. How fast can you talk? The defendant was $5 million underwater. There was no dispute about that. There was no concealment of assets here. There's an inaccurate estimate of income is what this case is about. Rental income, all the rental properties were disclosed on his petition, I think 10 of them. And in terms of motive, the trustee, his labor was required to earn this income. The trustee could not, and there was testimony about this, the trustee could not take over his interest in Hanover and perform that labor on behalf of the creditors. So there was no motive. Thank you, Mr. Goodman. Thank you. The case is taken under advisement.